IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LESHAWN MEDLOCK, | ) | CASE NO. 1:25-CV-02096-SL |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN TOM WATSON, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of Leshawn Medlock ("Medlock" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Medlock is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Leshawn Medlock*, Cuyahoga County Court of Common Pleas, Case No. CR-21-660862 and CR-21-655664. For the following reasons, the undersigned recommends that the Petition be DENIED.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Medlock's conviction as follows:

> {¶ 2} In July 2021, Medlock was indicted in two separate cases. In Cuyahoga C.P. No. CR-21-655664-A, Medlock was charged in a two-count indictment. Both counts charged Medlock with rape, felonies of the first degree, with furthermore clauses asserting that the victim was under the age

of ten, as well as specifications for notice of prior conviction ("NPC"); repeat violent offender ("RVO"); and sexually violent predator ("SVP").[1] The case involved one named victim.

{¶ 3} In Cuyahoga C.P. No. CR-21-660862-A, Medlock was charged in an eight-count indictment that included one count of rape, a felony of the first degree, with a furthermore clause alleging that the victim was under the age of ten; five counts of gross sexual imposition of a victim under the age of 13, felonies of the third degree; one count of rape of a victim under the age of 13, a felony of the first degree; and one count of attempted kidnapping with a sexual motivation specification, a felony of the second degree. All counts included a SVP specification. The case involved two named victims.

{¶ 4} After numerous pretrials, the case was set for trial. On September 26, 2022, Medlock declined the State's first plea offer of four counts of rape, felonies of the first degree, and two counts of sexual battery, felonies of the third degree, deleting the furthermore clauses and the specifications. A jury trial began later that day. The following day, before a jury was empaneled, the court was informed that the parties had come to a plea agreement. The State placed the plea agreement on the record. In Cuyahoga C.P. No. CR-21-655664-A, Medlock would plead guilty to one count of sexual battery of a victim under the age of 13, a felony of the second degree. In Cuyahoga C.P. No. CR-21-660826-A, Medlock would plead to one count of sexual battery of a victim under the age of 13, a felony of the second degree, and two counts of attempted gross sexual imposition, felonies of the fourth degree. The plea agreement encompassed all three named victims. In exchange for Medlock's guilty plea, the State would dismiss all remaining counts, as well as the specifications. As part of the plea agreement, the parties agreed to a recommended sentence of 10-18 years in prison for both cases. Medlock's counsel confirmed that this was their understanding of the plea agreement.

{¶ 5} The trial court then engaged in the Crim.R. 11 plea colloquy, learning that Medlock was 48 years old and a citizen and had graduated from high school and attended two years of college. The court went through each constitutional and procedural right that Medlock was waiving by pleading guilty to which he stated that he understood. The trial court then inquired:

> COURT: Do you understand, sir, that a plea of guilty is a complete admission of your guilt?
>
> MEDLOCK: Yes.
>
> COURT: And by entering such a plea, you are waiving all of these rights except for the right to counsel?

MEDLOCK: Yes.

COURT: Do you understand that upon acceptance of your plea, the Court may proceed to judgment and sentence?

MEDLOCK: Yes.

THE COURT: Has anyone, including your attorney, the prosecutor or this Court made any promises, threats or other inducements to you to cause you to enter this plea?

DEFENSE COUNSEL: Other than —

COURT: Other than what we said on the record here today.

MEDLOCK: No.

THE COURT: The charges of sexual battery as amended in Counts 1 in both Cases 660862 and 655664 are felonies of the second degree. Each is punishable by a possible term of incarceration of 2 to 8 years in yearly increments as well as a possible fine of up to $15,000. Do you understand the charge and the penalty for those two counts, Count 1 in each case?
MEDLOCK: I'm not sure. You say the fines?

COURT: Up to $15,000.

MEDLOCK: I understand.

COURT: And then do you understand that attempted gross sexual imposition as amended in Count 5 and Count 7 of Case Number 660862 are felonies of the fourth degree punishable by a possible term of incarceration of 6 to 18 months in one-month increments as well as a possible fine of up to $5,000? Do you understand those charges and the possible penalties?

MEDLOCK: Yes.

COURT: Do you understand that the Court can run those sentences concurrently, meaning all or some to be served at the same time, or consecutive, again, meaning all or some would run —

MEDLOCK: Yes.

...

COURT: Is there anything about your case or this proceeding that you do not understand?

MEDLOCK: I mean, I get everything.

COURT: Are you satisfied with the representation you have received from your attorney?

MEDLOCK: I mean, you know, it is what it is, but —

COURT: Well, you went from mandatory life with no parole to less than 20 years. You don't call that good enough?

MEDLOCK: Well, I mean, I'm not saying nothing bad either but, you know, I was —I mean, — I'm not guilty.

COURT: Are you satisfied with —

MEDLOCK: I'm not guilty

COURT: —his representation

MEDLOCK: Of course. I mean, I'm grateful.

COURT: How do you wish to plead to amended Count 1 in 660862, sexual battery, felony 2.

MEDLOCK: I plead guilty.

COURT: Voluntary plea done of your own free will and desire?

MEDLOCK: Yes.

(Tr. 36-42.) The court then went through the remaining counts with Medlock, each time asking how he pleads and whether such plea was a "voluntary plea done of [his] own free will and desire." (Tr. 42-43.) Thereafter, Medlock's counsel stated that he believed his client's pleas were "done in a knowing, voluntary and intelligent fashion." (Tr. 46.) Medlock's counsel explained that Medlock attended some college and that "he's one of the smarter clients that [he] ever had." (Tr. 46.) Medlock's counsel also stated to the court that "[he] think[s] [Medlock] understands exactly what's going on." (Tr. 46.) Finally, both the State and Medlock confirmed that the court followed the dictates of Crim.R. 11.

{¶ 6} On November 21, 2022, Medlock was sentenced to an 18-year prison term at the Lorain Correctional Institution. Additionally, the trial court

> imposed a five-year term of postrelease control and ordered Medlock to register as a Tier III sex offender.
>
> 1 As charged, Medlock was facing life without parole.

*State v. Medlock*, 2024-Ohio-5208, ¶¶ 2-6 (8th Dist.).

## II. Procedural History

### A. Trial Court Proceedings

On January 7, 2021, a Cuyahoga County Grand Jury indicted Medlock on the following charges: two counts of Rape in violation of R.C. § 2907.02(A)(1)(b), Notice of Prior Conviction pursuant to R.C. § 2929.13(F)(6), Repeat Violent Offender Specification, and Sexually Violent Preditor Specification in Case No. CR-21-655664. (Doc. No. 9-1, Ex. 1.) Medlock entered pleas of not guilty to all charges. (*Id*., Ex. 2.)

On July 15, 2021, a Cuyahoga County Grand Jury indicted Medlock on two counts of Rape, five counts of Gross Sexual Imposition, and one count of Attempted Kidnapping, a Sexual Motivation Specification, and a Sexually Violent Preditor Specification in Case No. CR-21-660862. (*Id*., Ex. 3.) Medlock entered pleas of not guilty to all charges. (*Id*., Ex. 4.)

On September 2, 2022, the State filed a Motion for Joinder of Indictments. (*Id*., Ex. 5.) Medlock opposed the motion on September 26, 2022. (*Id*., Ex. 6.)[1]

On September 26, 2022, Medlock waived his right to a jury trial for the repeat violent offender and notice of prior conviction specifications in Counts 1 and 2 in Case No. CR-21-655664. (*Id*., Ex. 7.)

On September 27, 2022, Medlock pleaded guilty to one count of Sexual Battery of a victim under the age of 13, in violation of R.C. § 2907.03(A)(1) in Case No. CR-21-655664. (*Id*., Ex. 8.) He pleaded guilty to one count of Sexual Battery of a victim under the age of 13, in violation of R.C. §

[1] No decision regarding the Motion for Joinder of Indictments was docketed in either criminal case, however, the September 26, 2022 transcript of proceedings reveals the cases were joined. (Doc. No. 9-1, Ex. 29, Tr. 60.)

2923.02/2907.05(A)(4), and one count of Gross Sexual Imposition. (*Id*., Ex. 9.) In exchange for the guilty pleas, the State agreed to removal all specifications and dismiss the remaining counts of the indictments. (*Id*., Ex. 8, 9.) As part of the plea agreement, the parties agreed to a sentence of ten to eighteen years in prison for both cases. (*Id*.)

On November 21, 2022, the trial court held a sentencing hearing. The trial court sentenced Medlock to a term of imprisonment of eight years in Case No. CR-21-655664 and a term of imprisonment of ten years in Case No. CR-21-660862, for an aggregate term of eighteen years. (*Id*., Ex. 10, 11.) The court required Medlock to register as a Tier III sex offender. (*Id*.)

**B. Direct Appeal**

Medlock, *pro se*, filed an untimely Notice of Appeal to the Eighth District Court of Appeals. (*Id*., Ex. 12.) That same day, Medlock filed a Motion for Leave to File Delayed Appeal. (*Id*., Ex. 13.) On October 31, 2023, the Eighth District Court of Appeals granted Medlock's Motion for Leave to File a Delayed Appeal, and *sua sponte* appointed an attorney to represent him. (*Id*., Ex. 14.)

In his appellate brief, he raised the following assignments of error:

> I. Appellant Medlock's guilty pleas are unconstitutional and must be vacated as they were not entered knowingly, intelligently and voluntarily because he professed his innocence and the trial court failed to comply with the *Alford* mandates by conducting the required inquiry prior to accepting the guilty pleas.

*Id*., Ex. 15.) The State filed a brief in response. (*Id*., Ex. 16.) Medlock filed a reply brief. (*Id*., Ex. 17.)

On October 31, 2024, the state appellate court affirmed Medlock's convictions. (*Id*., Ex. 18.)

On January 13, 2025, Medlock, proceeding *pro se*, filed a Notice of Appeal and a Motion for Delayed Appeal with the Supreme Court of Ohio. (*Id*., Ex. 19, 20.) The Ohio Supreme Court granted his Motion for Delayed Appeal. (*Id*., Ex. 21.)

In his Memorandum in Support of Jurisdiction, Medlock raised the following Proposition of Law:

> I. The Ohio Supreme Court should vacate the defendant-appellant Medlock's plea and remand to the trial court. Medlock's guilty pleas are unconstitutional and must be vacated as they were not entered knowingly, intelligently and voluntarily because he professed his innocence, and the trial court failed to comply with the Alford mandates by conducting the required inquiry prior to accepting the guilty pleas.

(*Id*., Ex. 22.) The State waived a response. (*Id*., Ex. 23.)

On May 13, 2025, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4). (*Id*., Ex. 24.)

**C. Federal Habeas Petition**

On September 19, 2025,[2] Medlock filed a Petition for Writ of Habeas Corpus in this Court and asserted the following ground for relief:

> **GROUND ONE**: The Trial Court's Acceptance of Petitioner's Guilty Plea was Unconstitutional and a violation of Petitioner's 5th and 14th Amendment rights, because they were not entered knowingly, intelligently or voluntarily, and because Petitioner professed his innocence, and the trial court failed to comply with the Alford Mandates by conducting the required inquiry prior to accepting the guilty plea.

(Doc. 1.)

On January 30, 2026, Warden Tom Watson ("Respondent") filed her Return of Writ. (Doc. No. 9.) Medlock did not file a Traverse.

---

[2] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until October 2, 2025, Medlock states that he placed it in the prison mailing system on September 19, 2025. (Doc. No. 1 at 10.) Thus, the Court will consider the Petition as filed on September 19, 2025.

## III. Review on the Merits

### A. Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v.Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct.
1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**B. Analysis**

In his sole assignment of error, Medlock argues the trial court complied with Crim.R. 11, but when the trial court asked him whether he was satisfied with trial counsel's performance, Medlock stated that he was not guilty, constituting an *Alford* plea. (Doc. No. 1 at 5.) Medlock contends that once an *Alford* plea is made, the trial court must inquire into the factual basis of the charges to determine whether the defendant is making an intelligent and voluntary plea, which did not happen here. (*Id*. at 8.) Medlock asserts the appellate court's statement that Medlock did not alert the trial court or the State that he was making an *Alford* plea is irrelevant because there is no requirement to do so. (*Id*.) Medlock claims the trial court failed to inquire into his reasons for pleading guilty while also stating his innocence, violating his constitutional rights. (*Id*.)

Respondent argues Medlock's ground for relief is without merit because the record demonstrates that Medlock knowingly, intelligently, and voluntarily entered a guilty plea to reduced charges. (Doc. No. 9 at 10.) Respondent contends Medlock was not asserting an *Alford* plea. (*Id*.) Respondent notes Medlock does not claim the court failed to comply with Crim.R. 11. (*Id*. at 12.) Respondent claims the trial court made sure Medlock was entering the plea voluntarily and whether he understood that it was an admission of guilt. (*Id*.) Respondent notes Medlock's attorney stated that he believed Medlock was making a "knowing, voluntary plea." (*Id*.) Respondent argues Medlock presented no evidence that he was unable to understand entering a guilty plea. (*Id*.)

Medlock raised his claim through the state courts. (Doc. No. 9-1, Ex. 15, 22.) The Eighth District Court of Appeals, the last court to decide the issue, made the following findings:

> {¶ 8} In his sole assignment of error, Medlock contends that his plea was not knowingly, intelligently, and voluntarily entered because the trial court failed to follow the requirements in *North Carolina v. Alford*, 400 U.S. 25,

37-38 (1970), when he proclaimed his innocence prior to entering his guilty plea. After a thorough review, we find Medlock's argument unpersuasive.

{¶ 9} Where a defendant enters a guilty plea in a criminal matter, "'the plea must be made knowingly, intelligently, and voluntarily[, and f]ailure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Nevels*, 2020-Ohio-915, ¶ 17 (8th Dist.), quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996); *see also State v. Veney*, 2008-Ohio-5200, ¶ 7. In determining whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, we must first review the record to determine whether the trial court complied with Crim.R. 11(C). *Id.*, citing *State v. Kelley*, 57 Ohio St.3d 127, 128-129 (1991); *State v. Brown*, 2019-Ohio-3516, ¶ 17 (8th Dist.).

{¶ 10} Medlock does not argue that the court failed to comply with Crim.R. 11; accordingly, "[w]hen a trial court complies with Crim.R. 11(C)(2) in accepting a plea, there is a presumption that the defendant's plea was knowingly, intelligently, and voluntarily made." *Id*., citing *State v. Nelson*, 2019-Ohio-3365, ¶ 16 (8th Dist.). In considering whether a plea was made knowingly, intelligently, and voluntarily, we examine the totality of the circumstances through a de novo review. *Id.*, citing *State v. Albright*, 2019-Ohio-1998, ¶ 16 (8th Dist.).

{¶ 11} Medlock contends that his guilty pleas should be vacated because the circumstances of his guilty pleas were similar to those of an *Alford* plea. In *Alford*, the defendant was charged with the capital crime of first-degree murder and was facing a possible death sentence or life imprisonment. *Alford,* 400 U.S. at 25-26. Alford was offered a plea agreement of second-degree murder. Because of the strong evidence against him, Alford pled guilty while disclaiming his guilt. *Id.* The trial court heard testimony from a police officer summarizing the case and two witnesses, as well as Alford himself. Alford indicated that he was pleading guilty to avoid the death penalty. The appellate court found that Alford's plea was involuntary because it was motivated by fear. *Id.* The United States Supreme Court disagreed, holding that guilty pleas linked with claims of innocence may be accepted provided the "defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* at 37. This became known as an *Alford* plea.

{¶ 12} Ohio courts have explained that an *Alford* plea is a unique type of guilty plea where the defendant, although pleading guilty, continues to deny his guilt but enters the guilty plea because the defendant believes that the offered plea outweighs the risk of being found guilty at trial. *State v. Piacella*, 27 Ohio St.2d 92 (1971); *see also State v. Wilkerson*, 2014-Ohio-3919, ¶ 17 (8th Dist.) ("An *Alford* plea results when a defendant pleads

guilty yet maintains actual innocence of the crime charged."); *State v. May*, 2021-Ohio-261, ¶ 9 (3d Dist.); *State v. Carey*, 2011-Ohio-1998, ¶ 6 (3d Dist.). In cases involving *Alford* pleas, there is a "heightened duty upon the trial court to ensure that the defendant's rights are protected and that entering the plea is a rational decision on the part of the defendant." *Carey* at ¶ 6. Consequently, "[w]here the defendant interjects protestations of innocence into the plea proceedings, and fails to recant those protestations of innocence, the trial court must determine that the defendant has made a rational calculation to plead guilty notwithstanding his belief that he is innocent." *State v. Padgett*, 67 Ohio App.3d 332, 337-338 (2d Dist. 1990). "This requires, at a minimum, inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence; it may require, in addition, inquiry concerning the state's evidence in order to determine that the likelihood of the defendant's being convicted of offenses of equal or greater magnitude than the offenses to which he is pleading guilty is great enough to warrant an intelligent decision to plead guilty." *Id.* at 338-339.

{¶ 13} Medlock cites to this court's decision in *Nevels*, 2020-Ohio-915 (8th Dist.), to support his position; however, we find the facts in that case are distinguishable. In *Nevels*, the defendant was charged with multiple counts of rape, kidnapping, and aggravated robbery. Nevels's counsel filed a motion to dismiss the rape charges arguing consent. In addition, the defendant protested his innocence prior to the plea, during the plea, and again at the sentencing hearing. This did not happen in the case at hand.

{¶ 14} Notably, in the matter before us, Medlock never represented to the trial court or the State that his plea would be an *Alford* plea, nor did the State agree to such a qualified plea. In fact, Medlock's counsel stated that he believed his client would be making a knowing and voluntary plea. Further, when the trial court engaged in the Crim.R. 11 plea colloquy, Medlock acknowledged that he understood each of the rights he was waiving. He answered in the affirmative when asked, "Do you understand, sir, that a plea of guilty is a complete admission of your guilt?" (Tr. 36-37.) It was only when Medlock was asked if he was satisfied with his attorney that he made two vague denials as to his guilt. Nevertheless, immediately after his denials, he pled guilty as to each count of the amended indictment. And when he was asked whether it was a "[v]oluntary plea done of your own free will and desire?" after each guilty plea, Medlock answered, "yes." (Tr. 42-43.)

{¶ 15} As stated previously, the trial court's heightened duty is not triggered unless "the defendant interjects protestations of innocence into the plea proceedings, *and fails to recant those protestations of innocence*[.]" (Emphasis added.) *Padgett*, 67 Ohio App.3d at 338-339. Based on the totality of circumstances, we find that Medlock's comment that he was not

> guilty when asked whether he was satisfied with his attorney, but then immediately reversed his position and acknowledged his guilt throughout the rest of the proceedings, including the sentencing, is not sufficient to trigger a trial court's heightened duty under *Alford*. Because Medlock was not protesting his innocence to the level required under *Alford* and *Padgett*, we find that his plea was knowingly, intelligently, and voluntarily entered.

*Medlock*, 2024-Ohio-5208, ¶¶ 8-15.

Contemplating an *Alford* plea, this Court explained:

> A plea under *Alford* "is a guilty plea in all material respects." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). To comply with the Due Process Clause, a guilty plea must be "voluntary and knowing." *Boykin v. Alabama,* 395 U.S. 238, 243 n.5 (1969); *see King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). "A state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence. *Stewart v. Morgan*, 232 F. App'x 482, 490 (6th Cir. 2007).
>
> "A prisoner who has entered a guilty plea ... and who later attempts to attack his judgment of conviction collaterally through a federal habeas corpus action is limited to raising only the issue of whether his guilty plea was knowing and voluntary." *Cubic v. Warden of Marion Corr. Inst.*, No. 12-cv-1472, 2014 WL 1270586, at *2 (N.D. Ohio Mar. 26, 2014). "A plea of guilty which is voluntarily and intelligently made satisfies the requirements of the Due Process Clause." *Id.*

*Little v. Sheldon*, 2023 WL 2666116, at *10. "If a defendant enters a guilty plea *while continuing to assert his innocence,* the district court may accept [the guilty plea] if there is 'a strong factual basis.'" *Tunning*, 69 F.3d at 111 (emphasis original), (quoting *Alford,* 400 U.S. at 37-38, 91 S.Ct. at 167-68). This requirement of "strong evidence" enables a court to determine that the defendant's guilty plea is voluntary and therefore not constitutionally infirm. *See Higgason v. Clark,* 984 F.2d 203, 207 (7th Cir. 1993). On the other hand, if a defendant enters a plea of guilty without also asserting his innocence, the trial court's "[c]ompliance with the procedures mandated by Crim.R. 11(C) . . . creates a presumption that the plea was knowing, intelligent, and voluntary." *Jacobs v. Warden, Se. Corr. Inst.*, No. 1:21-CV-461, 2023 WL 1971841, at *6 (S.D. Ohio Feb. 9, 2023), *report and recommendation adopted sub nom. Jacobs v. Warden, S. Corr. Inst.*, No. 1:21-

CV-461, 2023 WL 2943819 (S.D. Ohio Apr. 14, 2023), quoting *State v. Ogletree*, 2d Dist. Montgomery No. 21995, 2008-Ohio-772, ¶ 7.

After review of the record, the undersigned finds that Petitioner failed to demonstrate that the state courts' adjudication of his claim was contrary to or an unreasonable application of Supreme Court precedent.[3] The Ohio Court of Appeals reasonably found that the record demonstrates Medlock's guilty pleas were voluntary, intelligent, and knowing, and did not constitute *Alford* pleas.

Here, Medlock stated he was not guilty during the plea colloquy after the trial court asked him whether he was satisfied with trial counsel. (Doc. No. 9-1, Ex. 29, Tr. 42.) He went on to plead guilty to each count and confirmed the pleas were voluntary and done of his own free will and desire. (*Id.*, Tr. 42-43.) Medlock failed to continue to assert his innocence through the plea process. (*Id.*, Tr. 42-*Tunning*, 69 F.3d at 111.) The appellate court reasonably found Medlock only made "vague denials" before pleading guilty. Medlock's brief statement that he was not guilty prior to pleading guilty to each charge did not amount to the consistent assertion of innocence contemplated in *Alford*.

Moreover, Medlock does not contend that the trial court failed to comply with Crim. R. 11. The record reflects that the trial court confirmed Medlock was entering the plea voluntarily, and that he understood doing so was an admission of guilt. (Doc. No. 9-1, Ex. 29, Tr. 34-41.) Medlock's attorney stated he believed Medlock was "making a knowing, voluntary plea in this case." (*Id.*, Tr. 34, 46.) Because the trial court complied with Crim. R. 11, Medlock stated that he was entering his plea voluntarily and understood it was an admission of guilt, the plea was knowing, intelligent, and voluntary. *See Jacobs*, 2023 WL 1971841, at *6.

---

[3] The undersigned recognizes that while the trial court record reflects a protestation of innocence that could have been explored further, the AEDPA standard is difficult to meet. *Harrington,* at 786.

For all of the above reasons, the undersigned recommends finding Medlock's ground for relief fails on the merits.

## IV. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date: October 5, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**